**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARCO MIGUEL ROBERTSON,** | : | **Civil No. 3:14-CV-97** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Judge Caputo)** |
| | : | |
| **CHARLES SAMUELS, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of The Case

This *pro se* civil rights case was filed by the plaintiff, a federal prisoner, on January 27, 2014. (Doc. 1) Robertson's complaint was characterized as a civil rights tort action against federal officials, and names the Director of the Federal Bureau of Prisons, the Warden of the United States Penitentiary, Lewisburg, and the Commissioner of the Maryland Department of Corrections as defendants. (Id.) While Robertson names these three defendants, the factual narrative in his complaint makes no reference to any of the named defendants. Moreover, that factual narrative does not contain a clearly identifiable prayer for relief. Instead, Robertson's complaint simply states as follows:

> Steadily there has been a disruptive flow of me ordering and receiving Maryland State legal materials. Staff with inmates tamper with my ordering/obtaining legal materials which hamper my civil and criminal appeal filings. To receive equality as all other prisoners under the constitution a level playing field needs to be established in fairness that isn't as of right now.

(Id., p.4.)

While we liberally construe this complaint as alleging a violation of Robertson's right of access to the courts, we are unable to determine what relief Robertson seeks, and we cannot identify how the defendants named in this action are alleged to be personally culpable for this conduct, since Robertson has made not factual allegations relating to these officials. Nor can we identify with any specificity how Robertson's access to the courts was actually impeded in this case.

Robertson has not paid the filing fee required by law, and apparently seeks to proceed *in forma pauperis*. For the reasons set forth below, we will grant Robertson leave to proceed *in forma pauperis*, but as part of our legally-mandated screening review we find that Robertson has failed to state a claim upon which relief may be granted. Therefore, we recommend that the Court dismiss this complaint for failure to state a claim upon which relief can be granted, but without prejudice to allowing the plaintiff to attempt to correct the deficiencies noted in this report and recommendation by filing an amended complaint.

II.   **Discussion**

A.   **Screening of *Pro Se In forma Pauperis* Complaints–Standard of Review**

This Court has an on-going statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged."   <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).   As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."   <u>Id.</u> at 555.   "Factual allegations must be enough to raise a right to relief above the speculative level."   <u>Id.</u>

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.   In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."   <u>Id.</u> at 679.   According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   <u>Id.</u> at 678.   Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.   While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to  show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In  practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the

assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this regard, one of the basic requisites for a civil complaint is that it must recites some essential facts tying the defendants to some alleged misconduct. This fundamental requirement is driven both by matters of principle, and by pragmatic considerations. As a matter of principle and practice, a basic factual recital is

essential in a complaint because it is simply impossible without such averments to properly assign individual responsibility to a particular defendant without some factual description of what has transpired. Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's rights. When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims. See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint). Further, in order to satisfy the strictures of Rule 8, a complaint must also contain a coherent prayer for relief, demanding relief from a defendant that lies within the power of the defendant to provide. See Klein v. Pike Cnty. Comm'rs, CIV.A. 11-278, 2011 WL 6097734 (M.D. Pa. Dec. 6, 2011)(failure to articulate a prayer for relief compels dismissal); Snyder v. Snyder, 4:12-CV-105, 2012 WL 512003 (M.D.

Pa. Jan. 24, 2012) report and recommendation adopted, 4:12-CV-105, 2012 WL 511993 (M.D. Pa. Feb. 15, 2012)(same).

### B.    Robertson's Complaint Violates Rule 8

Here Robertson's complaint runs afoul of a fundamental legal obstacle. Robertson's complaint does not contain an articulable prayer for relief, explaining what relief Robertson seeks from the courts.  It is well-settled that: "[t]he Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed.R.Civ.P. 8(a)(2), and that each averment be 'concise, and direct,' Fed.R.Civ.P. 8(e)(1)."  Scibelli v. Lebanon County, 219 F.App'x 221, 222 (3d Cir.2007).  Thus, when a complaint is "illegible or incomprehensible", id., or when a complaint "is also largely unintelligible," Stephanatos v. Cohen, 236 F. App'x 785, 787 (3d Cir.2007), an order dismissing a complaint under Rule 8 is clearly appropriate. See, e.g., Mincv v. Klem, 303 F. App'x 106 (3d Cir.2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir.2008); Stephanatos v. Cohen. supra; Scibelli v. Lebanon County, supra.

Furthermore, under Rule 8 a complaint must contain a coherent, intelligible and attainable prayer for relief.  Klein v. Pike Cnty. Comm'rs, CIV.A. 11-278, 2011 WL 6097734 (M.D. Pa. Dec. 6, 2011)(failure to articulate a prayer for relief compels

dismissal); <u>Snyder v. Snyder</u>, 4:12-CV-105, 2012 WL 512003 (M.D. Pa. Jan. 24, 2012) <u>report and recommendation adopted,</u> 4:12-CV-105, 2012 WL 511993 (M.D. Pa. Feb. 15, 2012)(same).  Since a complaint must, at a minimum, contain a coherent prayer for relief, <u>see</u> Rule 8, Fed. R. Civ. P., it follows that this particular complaint, which does not state the relief that Robertson seeks in this lawsuit, fails as a matter of law.

        C.      **<u>Robertson's Complaint Fails to State Any Claims of Supervisory Liability Against Defendants Samuels, Thomas and the Commissioner of the Maryland Department of Corrections</u>**

In addition, in this case Robertson has named supervisory defendants in his complaint but has not alleged sufficient facts to give rise to supervisory liability against these officials.  In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that prison supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred.  Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants

actively deprived him of a right secured by the Constitution. <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902 (3d Cir. 1997); <u>see also</u> <u>Maine v.Thiboutot</u>, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988).

<u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . <u>See</u> <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also <u>Dunlop v. Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); <u>Robertson v. Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or

under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

<u>Ashcroft v. Iqbal</u>,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates.  <u>O'Connell v. Sobina</u>, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); <u>Neuburger v. Thompson</u>, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them.  See* <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988)." <u>Jetter v. Beard</u>, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, with respect to the supervisory defendants named in this complaint, Robertson does little more than name a supervisory official in the caption of the case, and then seek to hold that official personally liable based upon the official's supervisory status without making any specific factual allegations about these defendants in the body of this pleading.  To the extent that Robertson simply premises the liability of these defendants upon their supervisory status without setting forth any

-12-

further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants.  Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

### D.      Robertson Has Not Stated a Denial of Access to Courts Claim

Finally, Robertson's complaint fails to adequately state a denial of access to the courts claim.  Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817 (1977).  As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law.  Id. at 827  ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996).  In Lewis, the Court eschewed efforts to define this

right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete

outcomes when assessing such claims.  As the Court observed:

> Because Bounds did not create an abstract, freestanding right to a law
> library or legal assistance, an inmate cannot establish relevant actual
> injury simply by establishing that his prison's . . .  legal assistance
> program is subpar in some theoretical sense. . . .  Insofar as the right
> vindicated by Bounds is concerned, "meaningful access to the courts is
> the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks
> omitted), and the inmate therefore must go one step further and
> demonstrate that the alleged shortcomings in the  . . . legal assistance
> program hindered his efforts to pursue a legal claim. . . . . Although
> Bounds itself made no mention of an actual-injury requirement, it can
> hardly be thought to have eliminated that constitutional prerequisite.
> And actual injury is apparent on the face of almost all the opinions in the
> 35-year line of access-to-courts cases on which Bounds relied, see id. at
> 821-825, 97 S.Ct., at 1494-1497.  Moreover, the assumption of an
> actual-injury requirement seems to us implicit in the opinion's statement
> that "we encourage local experimentation" in various methods of
> assuring access to the courts.  Id., at 832, 97 S.Ct., at 1500.

Lewis v. Casey, 518 U.S. 343, 351-52 (1996).

Thus, following Lewis courts have consistently recognized two guiding

principles which animate access-to-court claims by prisoners.  First, such claims

require some proof of an actual, concrete injury, in the form of direct prejudice to the

plaintiff in the pursuit of some legal claim.  See, e.g., Oliver v. Fauver, 118 F.3d 175

(3d Cir. 1997); Demeter v. Buskirk, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug.

27, 2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31,

1998).  Furthermore, in order to bring a claim based upon the right of access to the

courts, inmates must claim "(1) that they suffered an actual injury—that they lost a chance to pursue a non-frivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir.2008) (quoting Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002)) (internal quotations omitted). Thus, in order to state a claim upon which relief may be granted an inmate-plaintiff's complaint must "describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.' " Monroe, 536 F.3d at 205–06 (quoting Christopher, 536 U.S. at 416–17). In this case, Robertson does not identify the legal claims which have allegedly been hampered in any fashion. Therefore, we are unable to make any determination regarding whether the underlying claim is more than a mere hope. Nor can we ascertain whether Robertson has, in fact, lost a legal remedy.

In sum, in its current form this complaint fails to state a claim upon which relief may be granted. While this screening merits analysis calls for dismissal of this action, we recommend that the plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed

in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

### III.   Recommendation

Accordingly, for the foregoing reasons, the plaintiff is GRANTED leave to proceed *in forma pauperis* but IT IS RECOMMENDED that the plaintiff's complaint be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set

forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of January, 2014.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge